**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**HEATHER KNIGHT**                                                                                          **PLAINTIFF**

**VS.                                         CASE NO. 3:15CV00265 PSH**

**CAROLYN W. COLVIN, Acting Commissioner,
    Social Security Administration                                                            DEFENDANT**

**ORDER**

Plaintiff Heather Knight ("Knight"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Colvin") to deny her claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge ("ALJ") erred by: (1) incorrectly assessing her residual functional capacity ("RFC"); and (2) not including Knight's morbid obesity in the hypothetical questions posed to the vocational expert. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on March 20, 2014. (Tr. 30-49). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Colvin's decision. 42 U.S.C. § 405(g).

*Administrative hearing:* Knight, who was 39 years old with a high school diploma, testified she was 5' 5" and weighed 362 pounds. She possessed a driver's license but stated she was anxious when driving. She drove herself to the administrative hearing. Knight had past relevant work as

1

a factory worker and cashier[1]. She left her last job as a cashier because she was laid off, but she nevertheless indicated she was unable to physically do the work. Following the layoff, she unsuccessfully searched for a cashier's job requiring less lifting. Knight stated she took the following medications: Cymbalta, Meloxicam, Seroquel, Trazadone, Buspirone, Lisinopril, Lasix, and Gabapentin. She also acknowledged a suicide attempt in November 2012. If awarded social security benefits, Knight indicated she planned to "see about getting the gastric bypass surgery or the lap band surgery to help lose enough weight that I can go back to work." (Tr. 42). She testified to an ability to stand for 20-30 minutes before needing to sit, and indicated she could sit for 15 minutes. She described limited daily activities, with rest periods, and stated she could not perform a previous job as a cook due to the demands for standing and lifting. She also testified to having headaches which sometimes last for 4 days. (Tr. 32-45).

A vocational expert was asked several hypothetical questions by the ALJ. The expert testified Knight could not perform her past relevant work. Asked to assume a worker with Knight's numerous limitations[2], the vocational expert testified such a worker could perform the job of surveillance monitor.

*ALJ's Decision:* In her September 12, 2014, decision, the ALJ found Knight had the

---

[1] Her earnings history (Tr. 176-177) reflects earnings beginning in 1992, with consistent earnings from 1998 through 2011.

[2] The hypothetical worker was in Knight's age bracket, with a high school diploma and similar work experience, and could do no more than sedentary work, could occasionally stoop and crouch, could never climb ladders, was limited to unskilled work where they are able to understand, retain, and carry out simple instructions, make simple work-related decisions, work where tasks are learned and performed by rote with few variables and little judgment, work with few changes in the workplace and where interpersonal contact is incidental to the work performed, where the supervision is simple, direct, and concrete, and where the worker had the option to sit and/or stand at will. (Tr. 46-47).

following severe impairments: depressive disorder, anxiety disorder NOS, post traumatic stress disorder, borderline personality traits, history of cannabis abuse, morbid obesity, back disorder, hypertension and fibromyalgia. In considering Knight's mental impairments under "paragraph B" of the Listings, the ALJ determined Knight had mild restrictions in activities of daily living, moderate difficulties in social functioning and with regard to concentration, persistence or pace. The ALJ found Knight experienced no episodes of decompensation. The ALJ specifically noted the above limitations were not an RFC determination at Step 4 or 5 of the sequential evaluation, as RFC findings require more detailed analysis. The ALJ determined Knight's RFC precisely mirrored the limitations set forth in her hypothetical question to the vocational expert and found in footnote 2 herein. Relying upon the testimony of the vocational expert, the ALJ found Knight capable of performing work in the national economy, such as the job of surveillance monitor, and therefore not disabled. (Tr. 9-23).

**Erroneous RFC Determination:** Knight first argues the ALJ erred in her RFC assessment. Specifically, Knight alleges the ALJ underestimated the effect of her mental impairments. This is not an instance where the ALJ neglected to address the mental impairments. To the contrary, the ALJ stated "her most severe impairments appear to be her mental issues and obesity." (Tr. 19). There are several reasons we find substantial evidence supports the ALJ's consideration of Knight's mental impairments and her ultimate RFC formulation.

First, the RFC conclusion is founded, to a large degree, upon the credibility assessment of the ALJ. Citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), the ALJ detailed the medical care received by Knight and her medications. Among the objective medical records, the ALJ focused on the reports of Dr. Hester, who performed mental diagnostic evaluations on Knight in September

3

2012 and March 2013[3]. Dr. Hester noted Knight had not been treated by mental health care professionals prior to the September 2012 examination. At the conclusion of that session, Dr. Hester diagnosed her with anxiety disorder NOS, depressive disorder NOS, PTSD, pain disorder associated with both medical and psychological factors, borderline personality traits, bulging discs with chronic back pain, hypertension, insomnia, and morbid obesity. When analyzing Knight's ability to function, Dr. Hester found her able to tend to basic self care needs, although slow in doing so. Dr. Hester further opined Knight was: able to communicate in and interact in a socially adequate manner; capable of communicating in an intelligible and effective manner; likely able to cope with the typical mental demands of basic work-like tasks; able to attend and sustain concentration on basic tasks; able to sustain persistence in completing tasks; and appeared capable of completing work-like tasks within an acceptable timeframe unless the tasks exacerbated her pain issues. (Tr. 378-379). When Dr. Hester saw Knight again in March 2013 he diagnosed her with pain disorder associated with both medical and psychological factors, PTSD, anxiety disorder NOS, depressive disorder NOS, cannabis abuse in full remission, back pain, fibromyalgia, morbid obesity, insomnia, and rapid heart rate. Although the missing page appears to have contained Dr. Hester's specific functional findings, the record does contain his conclusion that Knight "can complete work tasks within an acceptable timeframe unless tasks exacerbate her pain issues." (Tr. 445). The diagnoses and the conclusion from the March 2013 examination are consistent with the September 2012 examination.

The ALJ then addressed numerous *Polaski* factors to support her finding that Knight's

---

[3] Both parties note that one page of Dr. Hester's March 2013 report is omitted from the record. (Tr. 445). While it is disappointing that this page is missing, the record before the Court is ample and provides substantial support for our findings.

subjective allegations were not fully credible. The ALJ noted Knight's possible non-compliance with her medications. (See Tr. 569). The ALJ also correctly noted no treating or examining physician opined she was disabled or imposed limitations greater than those described in the RFC. Further, Knight discontinued working for reasons other than her alleged disability (laid off due to seasonal nature of work), a factor which weighs against her credibility. In addition, there were inconsistencies in some aspects of the record. For example, Knight testified to a very limited ability to perform daily activities but came to the emergency room in July 2013 with wrist and leg pain "secondary to tripping and falling from a standing position while carrying some bricks." (Tr. 468).

The ALJ's assessment of Knight's credibility is supported by substantial evidence. This credibility finding laid the foundation for the ALJ's RFC determination, which included accommodations for Knight's physical impairments (limited to sedentary work, with significant other restrictions) and her mental impairments (limited to unskilled work, with significant other restrictions). Substantial evidence supports the RFC determination, and we find no merit in the first claim of Knight.

In addition, the ALJ thoroughly and correctly addressed the GAF scores in the record. These scores should not control when, as in this instance, the medical evidence is ample and entitled to greater weight. *See Jones v. Astrue*, 619 F.3d 963 (8th Cir., 2010) and *Mabry v. Colvin,* — F.3d —, 2016 WL 827183 (March 3, 2016). The ALJ also acknowledged and discussed Knight's November 2012 apparent suicide attempt and her voluntary admissions to the hospital in February 2014. There was no error in the RFC conclusion reached by the ALJ.

**Error in not including Knight's morbid obesity in the hypothetical questions posed to the vocational expert:** Knight also assigns error in the ALJ's choice not to mention her morbid

obesity in the hypothetical questions posed to the vocational expert. This argument is without merit. The ALJ's hypothetical questions account for Knight's physical limitations, many of which are no doubt tied to her obesity. The limitations recited by the ALJ were numerous (sedentary work, only occasional stooping and crouching, never climbing ladders, with an option to sit or stand at will) and an explicit reference to obesity would not have added anything to the functional limitations already contained in the questions. There was no error in failing to reference obesity when these limitations tied to obesity were already presented to the expert witness.

In summary, we find the ultimate decision of Colvin was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Colvin is affirmed and Knight's complaint is dismissed with prejudice.

IT IS SO ORDERED this 20th day of April, 2016.

_____
UNITED STATES MAGISTRATE JUDGE